[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION TO STRIKE
The plaintiff, Helen Meyers, seeks injunctive relief and monetary damages from her employer, the defendant, Trinity College, with respect to a complaint in which she claims that the defendant failed to follow the procedures of its own Faculty Manual in denying her tenure.
The complaint alleges that in May, 1989, the plaintiff was appointed to a three year, non-tenure track position as Associate Professor in the Department of Music at Trinity. Thereafter she taught various courses in Ethnomusicology, and received excellent evaluations by the head of Trinity's Music Department. During the CT Page 12554-M 1990-91 academic year the number of students taking the plaintiff's course increased to more than 500, or approximately 25% of all students at Trinity.
During the 1991-1992 academic year the plaintiff was appointed to the full-time tenure track position of Associate Professor of Music. The defendant's Faculty Manual provides:
 Appointment at the rank of Associate Professor presumes the Ph.D. or equivalent, outstanding performance as a teacher, and mature scholarship recognized by the profession or equivalent professional contributions.
The foregoing provision permits the inference that the defendant's Faculty Appointments and Promotions Committee ("Committee") and its Board of Trustees found the plaintiff had demonstrated "outstanding performance as a teacher" prior to appointing her as an Associate Professor.
The complaint further alleges that in various evaluations of the plaintiff over the years the defendant was aware of the plaintiff's extensive writing and editing and that the plaintiff was recognized nationally and internationally as a major figure in the field of Ethnomusicology.
In March, 1995 the Committee issued a negative recommendation with respect to the plaintiff's application for tenure; The primary basis thereof was that the Committee "lacked adequate evidence to demonstrate the achievement of full teaching effectiveness." Thereafter the plaintiff appealed to the defendant's Appointments and Promotions Appeals Board ("Board"), which found the plaintiff's appointment as an Associate Professor created a "rebuttable presumption" that the plaintiff was an outstanding teacher, but the Committee had offered nothing to rebut the presumption. The Board returned the application to the Committee for further consideration and requested that the Ombudsman appoint a Senior Professor to collect and study materials concerning the plaintiff's teaching. The Committee ignored the direction of the Board, and failed to give reasons for the recommendation of denial of tenure in violation of the provisions of the Faculty Manual.
The Faculty Manual recognizes that the award of tenure is special, unique and important to a faculty member. The plaintiff CT Page 12554-N claims that as a result of the denial of tenure, she has suffered and will continue to suffer irreparable harm in her ability to locate a tenured or tenure-track position with another college or university, to her reputation in the field of Ethnomusicology, and to her career as a professional academician.
The defendant has moved to strike the plaintiff's claims for injunctive relief, which are as follows:
 1. An injunction restraining defendant from terminating the employment of plaintiff;
 2. A mandatory injunction compelling defendant to award to plaintiff tenure with defendant as Associate Professor in the Department of Music, with all of the rights, wages, benefits and privileges attendant thereto.
It is well established that courts generally do not order specific performance of personal service contracts. Burns v.Gould, 172 Conn. 210, 214-15, 374 A.2d 193 (1977); Lark v.Post-Newsweek, No. CV 940705362 (Nov. 28, 1994, Berger, J.); Solomonv. Hall-Brook Foundation, Inc., No. 1C2-CV-83213998 (Feb. 11, 1992, Katz, J.); Herman v. St. Vincent's Medical Center,3 C.S.C.R. 205 (Jan. 20, 1988, Licari, J.). Over one hundred years ago the Connecticut Supreme Court held that "[c]ontracts for personal service are matters for courts at law, and equity will not undertake specific performance." William Rogers Mfg. Co. v.Rogers, 58 Conn. 356, 363-64, 20 A. 467 (1890).
The courts generally advance the following reasons in support of their refusal to order specific performance of personal service contracts: the presence of an adequate remedy at law; the impossibility of a court coercing the rendering of personal service; the aura of involuntary servitude associated with the compulsion of services; the difficulty of judicial supervision over such a decree; the inexpediency of attempting to enforce such a decree; and the disinclination to continue hostile, intolerable employment relationships. Lark v. Post-Newsweek, supra, at 16. See also 71 Am.Jur.2d, Specific Performance § 164 and cases cited therein.
Several courts have recognized exceptions to the blanket prohibition against specific enforcement of personal service contracts. Espinosa v. Connecticut College, No. CV93-0522872 CT Page 12554-O (June 9, 1993, Hurley, J.); American Association of UniversityProfessors v. Bloomfield College, 129 N.J. Sup. 249, 322 A.2d 846
(1974).
In Espinosa the plaintiff was a foreign language instructor at the defendant college. She had worked for the defendant for five years under a series of one year contracts and was not on a tenure track. When she was advised by the defendant that her contract would not be renewed she sued the defendant for breach of contract, wrongful termination, defamation and other causes of action. She sought an order enjoining the defendant from terminating her employment pending the litigation of her action.
In denying the plaintiff's application for preliminary injunction, the court acknowledged:
 It is well-settled that an individual's loss of employment and wages, without more, does not constitute an irreparable injury for the reason that eventual receipt of back pay has been viewed as an adequate remedy at law. Local 818 v. Town of East Haven, 42 Conn. Sup. 227 (1992).
The court in Espinosa distinguished the status of the plaintiff from that of a professor on a tenure track, and implied that under certain circumstances, the termination of such a professor might cause irreparable injury.
In Bloomfield College, supra, the New Jersey Superior Court ordered the reinstatement of 13 tenured professors whose employment was terminated by the defendant college due to "financial exigencies." Under the terms of the defendant's faculty manual, financial exigency was one of only a few permissible reasons for terminating the employment of a tenured professor. The court found that the defendant did not establish financial exigency sufficient to warrant the terminations, the defendant had hired 12 professors to replace those terminated, the defendant's president wished to do away with the tenure system and the defendant's ostensible reason for the terminations was a mere pretext to carry out the plan to do away with the tenure system.
The court in Bloomfield College recognized the line of authority of cases such as Greene v. Howard University, 271 CT Page 12554-P F. Supp. 609 (D.C.D.C. 1967), rem. on other grounds, 134 U.S. App. D.C. 81, 412 F.2d 1128 (1969) where the court stated that a professor's contract could not be enforced by specific performance and observed:
 It would be intolerable for the courts to interject themselves and to require an educational institution to hire or to maintain on its staff a professor or instructor whom it deemed undesirable and did not wish to employ. For the courts to impose such a requirement would be an interference with the operation of institutions of higher learning contrary to established principles of law and to the best tradition of education. 271 F. Supp. at 615.
322 A.2d at 858-859.
After pointing out that the case before it was distinguishable from Greene because the professors were not terminated because their performance was undesirable, the court in Bloomfield College stated that "[t]he rule [prohibiting specific performance] is not hard and fast, and, as Williston observes, appealing factual situations may occasionally induce a court to enforce a personal service contract specifically, particularly in the absence of any personal relationship between the parties.' 11 Williston, Contracts, § 1424 at 786-787."322 A.2d at 859.
The court went on to consider cases involving public universities, where the courts sometimes do order professors to be reinstated:
 While it is true that in the [public university] cases reinstatement orders have in the main derived from statutory provisions coupled with the court's power to issue writs of mandamus, the substance of the action taken has been nothing more than to compel adherence to academic tenure commitments on the part of an educational institution. This is the route by which specific performance is obtained against a state body on the basis of contracts arising from statute. Acting otherwise in the case of a private institution would have us CT Page 12554-Q capitulate to a naked legalism in a manner unsuitable to the office of the Court of Chancery. Equity never permits a rigid principle of law to smother the factual realities to which it is sought to be applied.
322 A.2d at 859.
Although it may well be extremely unlikely that this court would ever grant the injunctive relief sought by the plaintiff, the court cannot say that such relief is absolutely unattainable in this case. By alleging that she was on a tenure track, that the reasons for her denial of tenure were unclear or nonexistent, and that the defendant had acknowledged that she was an excellent teacher, prior to asserting her teaching ability as the one area in which she was deemed to be lacking, the plaintiff has established that this may be the type of case in which the court could conceivably grant injunctive relief.
Based on the foregoing this court, which is a court of equity as well as a court of law, is unwilling to "capitulate to a naked legalism" by striking the claims for injunctive relief as a matter of law without affording the plaintiff a hearing. The courts in all but one of the cases relied upon by the defendant (Herman v. St. Vincent's Medical Center) may have had a similar view because they denied the injunctive relief only after an evidentiary hearing.
For the reasons set forth above, the Motion to Strike is denied.
By the Court,
Aurigemma, J.